IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 12-cr-0138-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    KENNETH ROYAL WHEELER,

    Defendant.

_____

**ORDER DENYING DEFENDANT'S
MOTION TO SEAL AND EXPUNGE**
_____

This matter is before the Court on Defendant Kenneth Royal Wheeler's ("Defendant" or "Mr. Wheeler") Supplemental Motion to Seal and Expunge ("Motion"). (ECF No. 324.) For the reasons set forth below, Defendant's Motion is denied.

### I. FACTUAL & PROCEDURAL BACKGROUND

On March 12, 2012, Defendant posted a statement on his Facebook page urging his "religious followers" to, *inter alia*, "kill cops[,] drown them in the blood of thier [*sic*] children, hunt them down and kill their entire bloodlines," and provided "a list of people to kill." (ECF No. 62-3.) On March 16, 2012, Defendant again urged his religious followers to, *inter alia*, "commit a massacre in the [S]tepping [S]tones preschool and day care, just walk in and kill everybody . . . if you have to bomb,em, [*sic*] set them on fire." (ECF No. 62-2.) Defendant lived "two to three blocks" away from the Stepping Stones daycare center. (ECF No. 198 at 52.)

On September 26, 2013, a jury convicted Defendant of two counts of transmitting

a threat in foreign commerce under 18 U.S.C. § 875(c) based on these Facebook posts.  (ECF Nos. 114, 181.)  On January 15, 2015, the Tenth Circuit reversed Defendant's conviction due to a change in law that invalidated the jury instruction on § 875(c), and remanded the case for a new trial.[1]  *United States v. Wheeler*, 776 F.3d 736; (ECF No. 272.)  The Government decided not to retry Defendant as he had already "served most of his anticipated sentence."[2]  (ECF No. 315 at 2; *see also* ECF No. 324 at 3.)  Accordingly, the Government filed an Unopposed Motion to Dismiss the Indictment, which the Court granted on February 23, 2016.  (ECF Nos. 304, 306.)

In 2017, Defendant sent various *pro se* letters and motions to the Court.  (*See, e.g.*, ECF Nos. 308, 309, 310, 312, 314.)  Among his filings was a "motion to seal and expunge[ ] [Defendant's] entire American criminal record, and a complete reinstatement of all rights {american and human}."  (ECF No. 309.)  The only other information provided in the letter was Defendant's full name, date of birth, and social security number.  (*Id.*)

On May 9, 2017, the Court directed the Government to respond to Defendant's motion to seal and expunge.  (ECF No. 311.)  In its response, the Government opposed Defendant's motion.  ("Response"; ECF No. 315.)  On June 13, 2017, Defendant replied to the Government, and the Court subsequently appointed him counsel.  (ECF

---

[1] Defendant's trial ran from September 23 until September 26, 2013.  (ECF Nos. 171, 174, 179, 181.)  The jury was instructed that 18 U.S.C. § 875 was a general intent crime, pursuant to the applicable law at the time.  (ECF No. 181-5 at 25.)  However, on September 15, 2014, the Tenth Circuit held that § 875(c) requires proof of a defendant's subjective intent to threaten.  *United States v. Heineman*, 767 F.3d 970 (10th Cir. 2014).

[2] Defendant was sentenced to 40 months of imprisonment, followed by three years of supervised release.  (ECF No. 218.)  Defendant served the prison portion of his sentence and was released to supervision on February 12, 2015.  (ECF No. 284 at 1.)

Nos. 318, 319.)

On November 7, 2017, the Court ordered Defendant's counsel to file a status report regarding the various letters and motions Defendant had recently sent to the Court. (ECF No. 322.) In the ensuing status report, Defendant's counsel informed the Court that her "[a]ttempts to assist Mr. Wheeler have been largely unsuccessful" and that it was "unclear" which letters and motions he wanted to still pursue. (ECF No. 323 at 2.) Counsel noted that when she informed Defendant that "she could and would file a supplemental motion addressing expungement[,] Mr. Wheeler appeared to accept [her] assistance." (*Id.*)

Defendant's counsel subsequently filed the Motion (ECF No. 324), which the Court construes to be a supplement to Defendant's previous *pro se* motion to seal and expunge (ECF No. 309).[3] In the Motion, as supplemented, Defendant seeks to seal this case's record and expunge his underlying arrest records. (*See* ECF No. 324 at 2–3, 5.) The Court will address each of Defendant's requests in turn.

## II. MOTION TO SEAL

### A. Legal Standard for Sealing Court Records

"Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner*

---

[3] After the Motion was filed, the Court denied as moot Defendant's previously filed *pro se* motion (ECF No. 309) as it requested the same relief (and was also clearly deficient under D.C.COLO.LCrR 47.1(c), discussed below). (ECF No. 325.) The Court further ordered as follows: "The Government may, but is not required to, file an additional response to Defendant's . . . Motion. If no additional response is filed, the Court will rely on the Government's previously-filed Response [315] to Defendant's pro se [m]otion." (ECF No. 325.) The Government chose not to file an additional response. Thus, the Court relies on the Government's previously-filed Response.

*Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "This right is premised upon the notion that transparency and public monitoring of the courts foster respect for the legal system and maintain the integrity of the judicial process." *United States v. Nacchio*, 2009 WL 10706270, at *1 (D. Colo. Mar. 17, 2009) (citing *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)).

"The public's ability to review the factual basis of this Court's decisions and evaluate the Court's rationale is critical, as it allows the public to determine whether the Court is properly fulfilling its role as a neutral arbiter." *Nacchio*, 2009 WL 10706270, at *1 (citing *United States v. McVeigh*, 119 F.3d 806, 814 (10th Cir. 1997)). Indeed, "Judges have a responsibility to avoid secrecy in court proceedings because 'secret court proceedings are anathema to a free society.'" *United States v. Carnagie*, 2006 WL 8429705, at *1 (D. Colo. Sept. 26, 2006) (quoting *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996)).

"This right [of access], however, is not absolute." *Mann*, 477 F.3d at 1149. Rather, the "presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." *Id*. "The party seeking to overcome the presumption [of access] bears the burden of showing some significant interest that outweighs the presumption." *Id*.

Moreover, "[a]ll courts have supervisory powers over their own records and files. Thus a court, in its discretion, may seal documents if the public's right of access is outweighed by competing interests." *Riker v. Fed. Bureau of Prisons*, 315 F. App'x 752, 755 (10th Cir. 2009). "Whether judicial records and other case-related information

4

should be sealed or otherwise withheld from the public is a matter left to the sound discretion of the district court." *Mann*, 477 F.3d at 1149 (citing *Nixon*, 435 U.S. at 599).

In furtherance of the common law right of access to court records, the District of Colorado promulgated D.C.COLO.LCrR 47.1, which provides that a motion to restrict public access to court records must:

> (1) identify the case, document, or the proceeding for which restriction is sought;
>
> (2) address the interest to be protected and why such interest outweighs the presumption of public access . . . ;
>
> (3) identify a clearly defined and serious injury that would result if access is not restricted;
>
> (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question . . . ; and
>
> (5) identify the level of restriction sought.

D.C.COLO.LCrR 47.1(c).

**B.     Analysis**

In its Response, the Government contends that Defendant's original request did "not satisfy the requirements for a motion to restrict that are contained in D.C.COLO.LCrR 47.1(c)[, n]or could those requirements be shown here." (ECF No. 315 at 1.) Despite this advanced notice of his filing deficiency, Defendant's Motion—which was filed nearly 6 months after the Government's Response—clearly fails to satisfy D.C.COLO.LCrR 47.1(c)'s requirements. For instance, the Motion fails to satisfy the fourth requirement because it does not explain why no alternative to restriction of the case's record is practicable or why only restriction will adequately

5

protect Defendant's interests.  The Motion also fails to satisfy the fifth requirement because it does not identify the level of restriction Defendant seeks.

The Court also finds that Defendant has not met his burden of showing that countervailing interests heavily outweigh the presumption of public access.  *Mann*, 477 F.3d at 1149; *see also* D.C.COLO.LCrR 47.1(c)(2).  In the Motion, Defendant argues that "while the Government may have an interest in maintaining records to aid in general law enforcement, this interest is substantially outweighed by Mr. Wheeler's right to privacy and the constraint of a federal criminal record on his ability to garner meaningful employment and housing."  (ECF No. 324 at 3.)  In support, Defendant discusses how he has been denied employment on twelve different occasions, and how he was denied an apartment and a peddler's permit.  (*Id*. at 3–5.)  Defendant asserts that "all of his attempts at gaining employment have been unsuccessful, with each employer indicating that they cannot hire [him] due to his felony criminal charge."  (*Id*. at 5.)  In addition, Defendant discusses how "[p]rior to this federal case, [he] made a respectable living selling his artwork at galleries or at festivals," but now "he cannot even afford to purchase art supplies" due to his record.  (*Id*.)

While the Court acknowledges that Defendant's ability to secure employment and housing are undoubtably significant interests, Defendant has failed to demonstrate how this case's record—in which his conviction was overturned and the charges against him dropped—is a reason for his alleged employment and housing difficulties.  Indeed, such an argument would be difficult to make when considering Defendant's state convictions, including, as of January 2014, two felonies.  (ECF No. 315 at 3–4 (citing ECF No. 206 at 10–15, ¶¶ 55–61).)  "Only in the rarest of cases is the sealing of

documents appropriate—for example, cases involving intensely personal issues such as abortion or birth control, or cases pertaining to the welfare of abandoned or illegitimate children." *United States v. Bencomo-Chacon*, 2007 WL 2021850, at *1 (D. Colo. July 11, 2007) (citing *Doe v. F.B.I.*, 218 F.R.D. 256, 259 (D. Colo. 2003). This is not one of those instances, and Defendant has not provided this Court with ample justification to find that this case's record should be sealed.

In addition, the Court notes that "where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." *Riker*, 315 F. App'x at 755. In its Response, the Government notes that this case is the "subject of a published Tenth Circuit opinion, *United States v. Wheeler*, 776 F.3d 736 (10th Cir. 2015)," and several District Court opinions available through legal search engines. (ECF No. 315 at 1–2.) *See United States v. Wheeler*, 2013 WL 169494 (D. Colo. Jan. 16, 2013); *United States v. Wheeler*, 2013 WL 1942213 (D. Colo. May 10, 2013); *United States v. Wheeler*, 2013 WL 4550498 (D. Colo. Aug. 28, 2013); *United States v. Wheeler*, 2014 WL 61125 (D. Colo. Jan. 7, 2014). Thus, the Government argues that it would not be "appropriate to remove those statements of law or the underlying documents from the public sphere." (*Id.*)

In the subsequently filed Motion, Defendant did not address these arguments. Nonetheless, since several documents in this case's record were used to determine Defendant's substantive legal rights—including documents relating to the Tenth Circuit's decision to overturn the conviction due to a change in law—a strong presumption of access attaches.

As a result of the foregoing, the Court finds that Defendant has failed to show that his privacy concern with respect to this case's record is sufficiently critical to outweigh the strong presumption in favor of public access to judicial records. *Mann*, 477 F.3d at 1149; *see also* D.C.COLO.LCrR 47.1(c)(2). Therefore, and in conjunction with Defendant's failure to satisfy D.C.COLO.LCrR 47.1(c)'s requirements, the Court denies Defendant's Motion to the extent it seeks to seal this case's record.

### III.  MOTION TO EXPUNGE

**A.    Legal Standard for Expunging Arrest Records**

A "district court has the authority to order expunction, but the power is not unfettered. Expunction is committed to the discretion of the trial court, but it is not a remedy to be granted frequently." *United States v. Friesen*, 853 F.2d 816, 817–18 (10th Cir. 1988).

"[I]n extreme circumstances, an arrest record may be expunged after dismissal of the charges or acquittal." *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993). "[T]he power to expunge an arrest record is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." *Friesen*, 853 F.2d at 818 (quoting *United States v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975)). In determining whether "unusual or extreme" circumstances exist, courts use a balancing test, "weighing the government's interest in maintaining criminal records against the harm done to the defendant." *United States v. Aston*, 132 F.3d 43 (table), 1997 WL 755136, at *1 (10th Cir. 1997); *see also United States v. Stegman*, 2016 WL 4430021, at *1 (D. Kan. Aug. 22, 2016). This balancing

test carries a "heavy presumption against expungement." *Aston*, 1997 WL 755136, at *1.

"Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible; where the court determined the sole purpose of the arrests was to harass civil rights workers; where the police misused the police records to the detriment of the defendant; or where the arrest was proper but was based on a statute later declared unconstitutional." *United States v. Schnitzer*, 567 F.2d 536, 540 (2d Cir. 1977) (internal citations omitted); *see also Stegman*, 2016 WL 4430021, at *1. Thus, "where the arrest itself was an unlawful one, or where the arrest represented harassing action by the police, or where the statute under which the arrestee was prosecuted was itself unconstitutional, courts have ordered expunction. However, . . . an acquittal, standing alone, is not in itself sufficient to warrant an expunction of an arrest record." *Linn*, 513 F.2d at 927–28.

**B.     Analysis**

Defendant's arrest was a lawful one, pursuant to an indictment returned by a duly constituted grand jury sitting in the District of Colorado. *See id*. at 928. The charges set forth in the indictment were lawful ones not subject to any constitutional infirmity. *See id*. Moreover, there is nothing to indicate any harassing action or misuse of Defendant's arrest records by law enforcement or any governmental agency. *See id*. At trial, this Court found there was sufficient incriminating evidence against Defendant to require submission of the two counts to the jury. *See id*. Defendant was not

9

acquitted on either charge, but instead was convicted by the jury on both counts. Defendant's conviction, however, was overturned on appeal because a change in law invalidated a jury instruction. Nevertheless, the Tenth Circuit found that there was sufficient evidence to convict Defendant and therefore he could be retired. *Wheeler*, 776 F.3d at 742–46. The Government, however, decided not to retry Defendant and dismissed the charges against him as he had already served most of his anticipated sentence. Thus, there are no clear grounds under the applicable law for the Court to grant expunction of Defendant's arrest records. *See Linn*, 513 F at 927; *see also Friesen*, 853 F.2d at 818.

Moreover, since "the power to expunge an arrest record . . . should not be routinely used whenever a criminal prosecution ends in an *acquittal*, but should be reserved for the unusual or extreme case," *Friesen*, 853 F.2d at 818 (emphasis added), it is clear from the aforementioned circumstances that expunction is not required or appropriate here. While it is undisputed that the Government's dismissal of the charges "effectively pronounces [Defendant] innocent" (ECF No. 324 at 3), the circumstances underlying the dismissal of the charges certainly places this case outside the ambit of cases where expungement has been permitted: simply, this is not a case where the defendant was acquitted. *See, e.g.*, *Linn*, 513 F.2d 925 (affirming trial court's denial of a motion to expunge arrest records even though the majority of the charges were dismissed prior to and during trial and the jury acquitted the defendant on all nine counts); *Friesen*, 853 F.2d 816 (reversing trial court's expunction of the defendant's arrest records even though the defendant was acquitted on all counts).

Even if the Court were to find that the Government's *dismissal* of the charges makes expungement a possibility, see *Pinto*, 1 F.3d at 1070, the Court finds that expungement is not appropriate as this is not an "unusual or extreme case," *Friesen*, 853 F.2d at 818. In the Motion, Defendant argues that his "circumstances are extreme and merit expungement" because his "conviction was deemed improper" and the charges against him were "dismissed entirely." (ECF No. 324 at 2–3.)

The Court finds Defendant's argument to be unconvincing. Notably, it is clear that this case is quite dissimilar from the cases where expungement has been granted due to "unusual or extreme" circumstances. In those cases, the arrests or convictions were somehow invalidated as they were unconstitutional, illegal, or obtained through government misconduct. *See Schnitzer*, 567 F.2d at 540. Such extreme circumstances are not present in this case. Instead, Defendant's conviction was reversed due to a change in law that invalidated a jury instruction. As a result, the Court finds that the circumstances of this case are clearly not "unusual or extreme" under the expungement doctrine.

In addition, the Court finds that the government's interest in maintaining the arrest records significantly outweighs the harm inflicted upon the Defendant. In its Response, the Government asserts that this "is the kind of arrest record that the police and the public need to maintain." (ECF No. 315 at 3.) The Government argues that if the Defendant "were to ever become in embroiled in violence again" or if "he were to loiter around a daycare center," law enforcement and prosecutors need to know this history. (*Id.*)

In his Motion, Defendant notes that "while the Government may have an interest

in maintaining records to aid in general law enforcement, this interest is substantially outweighed by Mr. Wheeler's right to privacy and the constraint of a federal criminal record on his ability to garner meaningful employment and housing."[4] (ECF No. 324 at 3.) In support, Defendant discusses how he has been denied employment on twelve different occasions, and how he was denied an apartment and a peddler's permit. (*Id*. at 3–4.)

The Court finds Defendant's arguments to be unpersuasive. This case was based on "a series of threats to torture and kill public officials, their children and families, and to exact revenge on the whole community by massacring its preschool children." (ECF No. 190 at 2.) Reviewing these threats in light of "recent massacres at educational and other institutions by active shooters," *Wheeler*, 776 F.3d at 745, the Court finds it evident that the Government has a strong interest in maintaining Defendant's arrest records.

In regard to Defendant's allegations that he suffers substantial harm as he has had difficulty in securing employment and housing, the Court finds these allegations to be largely unsubstantiated. Indeed, Defendant has not shown that his alleged difficulties are due to his arrest records in this case. Moreover, the case record does not give the Court any reason to predict that Defendant could make such a showing in light of Defendant's numerous state *convictions*. Such a notion is supported by how his arrest records in this case display how his conviction was overturned and the charges

---

[4] In addressing his request to seal, Defendant included the following catch-all sentence: "Mr. Wheeler makes identical arguments as those made . . . in his request for expungement." (ECF No. 324 at 5.) As a result, the Court necessarily readdresses arguments already discussed above.

against him dropped. As a result, the Court also finds that the Government's interest in maintaining Defendant's arrest records in this case significantly outweighs the harm caused to Defendant.

Pursuant to the foregoing analysis, the Court denies Defendant's Motion to the extent it seeks to expunge Defendant's arrest records.

## IV. CONCLUSION

For the reasons set forth above, the Court denies Defendant's Supplemental Motion to Seal and Expunge (ECF No. 324).

Dated this 9th day of July, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge